1  Brian C. Sinclair (State Bar No. 180145)
2  bsinclair@rutan.com
   Peter Hering (State Bar No. 298427)
3  phering@rutan.com
   RUTAN & TUCKER, LLP
4  611 Anton Boulevard, Suite 1400
5  Costa Mesa, California 92626-1931
   Telephone:   714-641-5100
6  Facsimile:   714-546-9035
7
8  Attorneys for Defendants
   DSW SHOE WAREHOUSE, INC.
9  and DESIGNER BRANDS INC.

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                   WESTERN DIVISION

| | |
|---|---|
| 13  JILL MORRISON; individually, and on behalf of other members of the general public similarly situated and on behalf of other aggrieved employees pursuant to the California Private Attorneys General Act, | Case No. 2:19-cv-09477-DSF-AFM |
| | Assigned to Hon. Dale. S. Fischer |
| Plaintiff, | **DECLARATION OF KATHERINE CLAYTON IN SUPPORT OF DEFENDANTS' MOTION TO (1) DISMISS PLAINTIFF'S ELEVENTH CAUSE OF ACTION (FRCP Rule 12(b)(6)); (2) COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS; (3) STRIKE CLASS ALLEGATIONS; AND (4) STAY ACTION** |
| vs. | |
| DSW SHOE WAREHOUSE, INC., a Missouri Corporation; DESIGNER BRANDS, INC., a California Corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | *(Filed Concurrently With Notice of Motion; Memorandum of Points and Authorities; Declarations of Miriam Shoap and Peter Hering; and [Proposed] Order)* |
| | **Hearing** |
| | Date:           February 10, 2020 |
| | Time:           1:30 p.m. |
| | Courtroom:   7D |

Rutan & Tucker, LLP
attorneys at law

2709/027347-0024
14420174.3 a12/09/19

-1-

2:19-cv-09477-DSF-AFM
DECLARATION OF KATHERINE CLAYTON

## DECLARATION OF KATHERINE CLAYTON

I, Katherine Clayton, declare as follows:

1.     I am a Senior Manager of Learning & Development at Designer Brands Inc. ("Designer Brands"), which is the parent corporation of DSW Shoe Warehouse, Inc. ("DSW," together with Designer Brands, "Defendants").   I make this declaration in support of Defendants' motion to (1) dismiss Plaintiff's eleventh cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) compel arbitration of Plaintiff's individual claims against DSW and Designer Brands; (3) strike Plaintiff's class allegations pursuant to Federal Rule of Civil Procedure 12(f); and (4) stay the action pending the completion of the arbitration.  The following facts are based on my personal knowledge and my review of business records, which are kept in the ordinary course of business.  All such business records were created or maintained in the ordinary course of Defendants' business and in accordance with normal business practices.  If called as a witness, I could and would testify competently to these facts under oath.

2.     I have worked for Designer Brands, which was formerly known as DSW Inc., since 2009, most recently as a Senior Manager, Learning & Development, in the Human Resources Learning & Development Department, a position I have held since March 2019.  Before moving into my current role, I worked as a Manager, e-Learning, from May 2014 to March 2019.  In my current and previous roles, I am and was responsible for providing training modules to DSW's' associates, which includes assistant store managers like Jill Morrison, on DSW's employment policies and practices.

3.     Starting in 2007, Defendants began training associates through an online training platform called Learning Resource Center Online ("LRC Online").  Every associate is assigned an individual LRC Online profile, called "My Transcript," which tracks the training modules the associate has completed and the training modules the associate still needs to complete.  As part of my role as a

1   Manager, e-Learning, I managed the training content placed on the associates' LRC
2   Online transcripts. Further, in my current role (and my previous role), I can see what
3   trainings the associates have completed on their LRC Online transcripts.

4        4.      To access their LRC Online transcript, each associate is given a unique
5   username and an initial password, which the associates are required to change to
6   their own unique password when they first log in to LRC Online. Only the associate
7   has both the unique username and the personally-selected password to access the
8   associate's LRC Online transcript and complete the assigned trainings. Associates
9   are prohibited from sharing their usernames and passwords with anyone under
10  DSW's Technology Use Policy. Ms. Morrison completed the training on DSW's
11  2014 Technology Use Policy on June 28, 2014. Attached as **Exhibit 1** is a copy of
12  DSW's 2014 Technology Use Policy, and attached as **Exhibit 2** is a screenshot
13  showing that Ms. Morrison reviewed and completed the training on DSW's 2014
14  Technology Use Policy on June 28, 2014. Ms. Morrison received training at least
15  twice on Information Security Awareness, which included specific training on
16  password security, on April 18, 2013 and June 28, 2014. Attached as **Exhibit 3** are
17  screenshots showing that Ms. Morrison reviewed and completed the training on
18  Information Security Awareness on April 18, 2013 and June 28, 2014. Attached as
19  **Exhibit 4** are relevant excerpts from the Information Security Awareness training
20  she completed on April 18, 2013, and attached as **Exhibit 5** are relevant excerpts
21  from Information Security Awareness training she completed on June 28, 2014.

22       5.      In March 2017, DSW rolled out a Dispute Resolution Agreement that
23  provided for arbitration of employment-related disputes (the "Arbitration
24  Agreement") and a new Associate Handbook (the "Handbook") for both existing
25  associates and new hires. DSW used LRC Online to distribute the Arbitration
26  Agreement and the Handbook in electronic format to associates. It was my
27  responsibility to place both the Arbitration Agreement and the Handbook on the
28  associates' LRC Online transcripts.

6.    On March 10, 2017, I placed the following training modules on the LRC Online transcripts of store management at all DSW stores, including Ms. Morrison's LRC Online transcript: (1) the Associate Handbook module (the "Handbook Module"); and (2) the DSW Arbitration Agreement – Stores module (the "Arbitration Module").   Store management was notified about the new training modules on March 13, 2017.

7.    The Handbook Module walks the associates through the Handbook step-by-step in click-through fashion.  The Handbook specifically mentions DSW's Arbitration Agreement and explains that associates who do not opt of the Arbitration Agreement within 30 days of receipt will be bound by the terms of the Arbitration Agreement.   Further, the Handbook specifically refers associates to their LRC Online transcripts for opt-out instructions.  Attached as **Exhibit 6** are the relevant screenshots of the Handbook Module I assigned to LRC Online transcripts in March 2017.

8.    The Arbitration Module walks the associates through the Arbitration Agreement step-by-step in click-through fashion.   Attached as **Exhibit 7** are screenshots of each screen of the click-through process of the Arbitration Module.

9.    DSW's records reflect that Ms. Morrison signed into her LRC Online transcript on March 15, 2017, to review the Handbook Module and the Arbitration Module. Only Ms. Morrison, using her unique username and her personally-selected password could complete the training modules on her LRC Online transcript.

a.    DSW's records reflect that Ms. Morrison completed the Handbook Module at 7:17 pm PDT on March 15, 2017.  Attached as **Exhibit 8** is a screenshot from Ms. Morrison's LRC Online transcript showing the time and date Ms. Morrison electronically completed the Handbook Module.[1]  Only Ms. Morrison, by using her unique username and her personally-selected password, could have

---

[1] Times listed on the screenshots are in EDT, not PDT.

Rutan & Tucker, LLP
*attorneys at law*

2709/027347-0024
14420174.3 a12/09/19

-4-

2:19-cv-09477-DSF-AFM
DECLARATION OF KATHERINE CLAYTON

1  completed the Handbook Module, which created the date and time stamps listed on

2  Exhibit 8.  Further, only after Ms. Morrison acknowledged on the last screen of the

3  Handbook Module (Exhibit 6) that she had received the Handbook, which required

4  her to click the box next to the words "I acknowledge," would her LRC Online

5  transcript show "Completed" as the status for the Handbook Module.

6     b. After Ms. Morrison completed the Handbook Module, she

7  received a certificate of completion, available on the Completed tab of Ms.

8  Morrison's LRC Online transcript.  Attached as **Exhibit 9** is a copy of the certificate

9  of completion for the Handbook Module.

10     c. DSW's records further reflect that directly after reviewing the

11  Handbook Module, Ms. Morrison completed the Arbitration Module at 7:19 pm

12  PST.  Attached as **Exhibit 10** is a screenshot from Ms. Morrison's LRC Online

13  transcript showing the time and date Ms. Morrison electronically completed the

14  Arbitration Module.  Only Ms. Morrison, by using her unique username and her

15  personally-selected password, could have completed the Arbitration Module, which

16  created the date and time stamps listed on Exhibit 10.  Further, only after Ms.

17  Morrison acknowledged on the last screen of the Arbitration Module (Exhibit 7) that

18  she had read and understood the Arbitration Agreement, which required her to click

19  the box next to the words "I acknowledge," would her LRC Online transcript show

20  "Completed" as the status for the Arbitration Module.

21     d. After Ms. Morrison completed the Arbitration Module, she

22  received a certificate of completion, available on the Completed tab of Ms.

23  Morrison's LRC Online transcript.   Attached as **Exhibit 11** is a copy of the

24  certificate of completion for the Arbitration Module.

25    10. While DSW's records reflect that Ms. Morrison reviewed the

26  Arbitration Module in one session, she could, if she chose to, have reviewed the

27  Arbitration Module in several sessions.  Her LRC Online transcript would have

28  saved her progress and allowed her to return to it at any time.  Even after she

Rutan & Tucker, LLP
attorneys at law

2709/027347-0024
14420174.3 a12/09/19

-5-

2:19-cv-09477-DSF-AFM
DECLARATION OF KATHERINE CLAYTON

completed the Arbitration Module, she had the ability to go back into her "My Transcripts" on LRC Online under "Completed" trainings and re-review the completed Arbitration Module.  In fact, for the remainder of her employment with DSW, Ms. Morrison would have had access to the full Arbitration Module under her "Completed" transcripts.  Attached as **Exhibit 12** is a summary of Ms. Morrison's completed trainings on her LRC Online transcript.  In addition to logging in to re-review the Arbitration Module, Ms. Morrison could have also printed screenshots of the different screens of the module for her records on her store's office printer.

11.    As an assistant manager, Ms. Morrison had access to a PDF version of the Arbitration Agreement on DSW's intranet.  She could have accessed the PDF version during her employment and printed herself a copy of the Arbitration Agreement.

12.    As set forth above, Ms. Morrison was the only person who should have known both her unique username and her personally-selected password in order to acknowledge that she had reviewed the Handbook Module and the Arbitration Module.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 10, 2019, at Columbus, Ohio.


Katherine Clayton

Rutan & Tucker, LLP
attorneys at law

2709/027347-0024
14420174.3 a12/09/19

-6-

2:19-cv-09477-DSF-AFM
DECLARATION OF KATHERINE CLAYTON

# EXHIBIT 1



Effective Information Security is a collaborative effort involving all DSW Associates and Business Partners.  We are all responsible for Information Security.

**Information Asset:** An Information Asset is a definable piece of information that is stored in a manner recognized to be valuable to the organization.

**Information Device:** An Information Device is any device that accesses, processes, stores or transports Information Assets (e.g. computers, mobile devices, network equipment, printers).

DSW Associates and DSW Business Partners (collectively referred to as "Users") are required to comply with the following:

1. DSW reserves the right to audit Information Devices to ensure compliance with this policy.

2. DSW reserves the right to monitor any software or service that has access to DSW Information Assets.

3. DSW reserves the right to remove or disable any software or service that is in violation of any DSW policy, standard or procedure.

4. DSW reserves the right to collect any device, including a personally owned device, meeting any of the following conditions:
   a. Connected to any non-public DSW network (e.g. corporate wireless)
   b. Connected to any DSW owned Information Device (e.g. plugged into your DSW PC)
   c. Storing DSW Information Assets
   d. Suspected of compromising the confidentiality, integrity or availability of DSW Information Assets

5. DSW reserves the right to erase DSW Information Assets (e.g. DSW email) contained on any device including personally owned devices.  This may include complete erasure of all storage.

6. Users have no right of privacy regarding anything they create, store, send, or receive by or through a DSW owned Information Device.  Data on any DSW owned Information Device is the property of DSW.

7. Users are responsible for the security of their accounts, passphrases and SecurID tokens.  Account sharing is prohibited.

8. Files containing Level 1 or Level 2 data:
   a. Must only be saved on restricted-access network drives
   b. Must only be accessed via DSW network or remotely via DSW VPN
   c. Must not be saved on portable or removable media
   d. Must not be transmitted via email, not even if encrypted
   e. Must not be saved to any external file storage/sharing service

9. Emailing DSW Information Assets to or from a non-DSW email account (e.g. Gmail, Outlook.com) is prohibited.

10. DSW email accounts are for DSW business purposes.  Users are permitted to use DSW email for occasional personal reasons; however, DSW expects personal use will be reasonable and the privilege is not abused.

11. DSW email is available remotely via mail.dswinc.com and on mobile devices via ActiveSync.  Users may configure ActiveSync on personal devices but that device may be subject to other policies.  Users may use mail.dswinc.com on personal and public devices.  When accessing web mail from a public or shared computer Users must choose the security option "This is a public or shared computer" when logging in.

12. Users are responsible for the security of their personal devices (e.g. software updates, configuration).  Users should not access DSW email or other Information Assets from any device that may be improperly secured.

EXHIBIT 1, PAGE 7



13. DSW owned Information Devices must not be left unattended in a public place.

14. When unattended in a vehicle, DSW owned Information Devices must be stored in a locked trunk.  If that is not possible, Information Devices must be kept out of plain sight in a locked vehicle.

15. When unattended in a hotel room, DSW owned Information Devices must be locked in a suitcase or hotel safe.

16. DSW owned Information Devices must not be used by anyone other than the authorized User.  This includes the User's family members.

17. If a DSW owned Information Device or any device using active sync is lost or stolen, the User must immediately report the incident to the Service Desk and to the User's manager.  A police report must be filed for any DSW owned Information Device stolen and a copy of the police report must be sent to the Loss Prevention Department.  If personal device using active sync is lost or stolen, DSW has the right to send a factory reset command to the device.

18. Attaching unauthorized devices to DSW owned Information Devices is prohibited (e.g. don't connect any personal device to your DSW laptop).  Prohibited devices include mobile phones, tablets, music players and portable storage devices.

19. Attaching unauthorized network devices to a DSW network is prohibited.  Prohibited devices include network switches, hubs, wireless routers and repeaters.

20. DSW can provide a USB drive for physical data transfers.  DSW has encrypted USB drives available if necessary.  A USB drive can be requested through an IT Services Request (ITSR).

21. Connecting unauthorized Information Devices to any non-public, non-VPN DSW network is prohibited (e.g. don't connect your personal tablet to "snickers").

22. DSW provides a public wireless network (DSW-Public) for Users who have personal devices that require an Internet connection.

23. DSW provides remote access to Users through VPN.  Access is granted based on business need.  Remote access can be requesting through an IT Services Request (ITSR).

24. Installing unauthorized, unlicensed, or illegal copies of software on DSW Information Devices is prohibited

25. The use of peer-to-peer file sharing programs on DSW owned Information Devices is prohibited (e.g. BitTorrent, FrostWire, Vuze).

26. Syncplicity is the DSW approved external file storage/sharing service.  Storing DSW Information Assets on unapproved file storage/sharing services is prohibited (e.g. Dropbox, Google Drive, SkyDrive, SpiderOak). Syncplicity access can be requesting through an IT Services Request (ITSR).

Failure to comply with any part of this policy will result in disciplinary action.

Exceptions may be granted for some policy statements.  Please contact the DSW Service Desk staff for further information.

This document is updated periodically.  The current version of this document is accessible through Unicenter Service Desk (USD) under the Knowledge tab.

EXHIBIT 1, PAGE 8

# EXHIBIT 2

2014 Technology Use Policy



# EXHIBIT 3

**2013 DSW Information Security Awareness**

▶ Edit Transcript Details



🗂 Move to Archived Transcript

**Training Details**

Training Type: Compliance
Provider: DSW - IT Compliance
Version: 1.0
Training Hours: 0 Hours 0 Min
Description: Once you complete this course you will be able to understand  - DSW's Technology Use Policy - How to protect DSW's information assets - Information security procedures and techniques to use - What sensitive data is and how to protect it
Status: Completed
Due Date: 5/3/2013
Certificate: **Print Certificate**

**Assignment and Version History**

| Registration Number | Latest Registration? | Delivery | Transcript Delivery Method | Version | Effective Date | Start Date | End Date | Due Date | Status | Options |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Yes | Assigned by KATHERINE CLAYTON on 4/12/2013 5:00:28 PM | System Assignment (LAT) | | 4/10/2013 | None | None | 5/3/2013 | Completed | |

**Transcript History**

Completed by JILL MORRISON (347570) on 4/18/2013 2:03:56 PM Comments: Acknowledgement is completed
Completed by JILL MORRISON (347570) on 4/18/2013 2:03:46 PM
Approved by Learning Assignment Tool (KATHERINE CLAYTON) on 4/12/2013 5:00:29 PM
Registered by Learning Assignment Tool (KATHERINE CLAYTON) on 4/12/2013 5:00:29 PM
Assigned by Learning Assignment Tool (KATHERINE CLAYTON) on 4/12/2013 5:00:28 PM Comments: Initial Request

* Time Zone: (UTC-05:00) Eastern Time (US & Canada)

**2014 Information Security and Compliance Awareness**

> Edit Transcript Details

 Move to Archived Transcript

**Training Details**

Training Type: Compliance
Provider: DSW - IT Compliance
Version: 1.0
Training Hours: 0 Hours 0 Min
Description: After reading this document you will know: -Why it's important to protect DSW's electronic data or 'Information Assets' -What information is sensitive and how can you protect it?
Status: Completed
Due Date: 6/27/2014
Certificate: **Print Certificate**

**Assignment and Version History**

| Registration Number | Latest Registration? | Delivery | Transcript Delivery Method | Version | Effective Date | Start Date | End Date | Due Date | Status | Options |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Yes | Assigned by KATHERINE CLAYTON on 6/16/2014 10:06:25 AM | System Assignment (LAT) | | 5/28/2014 | None | None | 6/27/2014 | Completed | |

**Transcript History**

Completed by JILL MORRISON (347573) on 6/26/2014 3:03:35 PM Comments: Acknowledgement is completed
Completed by JILL MORRISON (347573) on 6/26/2014 3:01:53 PM
Assigned by Learning Assignment Tool (KATHERINE CLAYTON) on 6/16/2014 10:06:25 AM Comments: Initial Request
Approved by Learning Assignment Tool (KATHERINE CLAYTON) on 6/16/2014 10:06:25 AM
Registered by Learning Assignment Tool (KATHERINE CLAYTON) on 6/16/2014 10:06:25 AM

* Time Zone: (UTC-05:00) Eastern Time (US & Canada)

# EXHIBIT 4

# Information Security Awareness



1

EXHIBIT 4, PAGE 12

# Protecting DSW Information Assets: Strong Passwords

## Do:

- Use a long password with mixed-case and a random order of letters, numbers & punctuation such as: **IcU2day!&forEVer**
- Use at least 11 characters
- Use a password you can remember without writing it down

## Don't:

- Use information that is easily obtained about you in your password
- Use dates or any combination thereof
- Use keyboard sequences
- Use a simple word (buckeye)
- Reveal a password to anyone

**DSW**
SHOE WAREHOUSE®
5

# Summary

## _As a result of completing this course, participants:_

➢ Realize the ways to protect DSW Information Assets

    ➢ Proper password set up

    ➢ Using social communications and media safely and  effectively

➢ Understand what sensitive information is

    ➢ Proper disposal of unneeded sensitive information

➢ By marking this LRC training complete, acknowledge this
training and agree to follow DSW's Technology Use Policy



12

# EXHIBIT 5

# Information Security and Compliance Awareness



1

EXHIBIT 5, PAGE 15

# Protecting DSW:
# Strong Passwords or Passphrases

## Do:

➤ Use at least 12 characters

➤ Use mixed-case and a random order of letters, numbers, and punctuation

➤ Use a passphrase you can remember or use a secure repository such as KeePass

➤ Change your passphrase if you think someone else knows it

## Don't:

➤ Use information that is easily obtained about you in your passphrase

➤ Use dates or any combination thereof

➤ Use keyboard sequences

➤ Use a simple word or words (gobuckeyes)

➤ Share your passphrase with anyone

**DSW**
SHOE WAREHOUSE®

9

# EXHIBIT 6

**Relevant Screenshots of Click-Through Process**
**Associate Handbook**

Initial Screen



Screen 5: Arbitration Agreement



Screen 81: Associate Receipt of Handbook

| Who We Are | Accountability | Collaboration | What We Offer You | Associate Receipt of Handbook |
|---|---|---|---|---|

The contents of this handbook are guidelines only and replace any prior handbooks. Neither this handbook nor any other company guidelines, policies or practices create an employment contract. The company has the right to change any of its policies, benefits, working conditions, or practices with or without   notice at any time, in an individual case or in general. Either the associate or the company may terminate the employment relationship, at any time for any reason. No one is authorized to give anyone an employment contract or offer special terms of employment unless in writing and signed by an officer of the company. This notice applies to all associates regardless of date of hire.

By marking below, I acknowledge that I have received a copy of the handbook, have read it or will read it, and have had the opportunity to answer any and all questions I may have regarding its contents. I understand that failing to abide by any of the guidelines discussed in the handbook could lead to discipline up to and including termination of my employment.

☐ I Acknowledge.

For questions about this handbook, please contact your manager. Welcome to our team!

EXHIBIT 6, PAGE 18

# EXHIBIT 7

## Screenshots of Click-Through Process
## DSW Arbitration Agreement – Stores

Overview Tab



Arbitration Agreement Tab (10 Total Slides)





| Overview | Arbitration Agreement | Opt Out Instructions | Arbitration Acknowledgement |

**1. Claims Covered by This Agreement**

Except as otherwise set forth in this Arbitration Agreement, final and binding arbitration shall be the sole and exclusive remedy for all Claims between the Company and Employee.

The term "Claims" means all past, present, and future claims, disputes, and controversies of any nature in any way arising out of, relating to, or associated with Employee's employment with the Company for which a court or governmental agency is authorized by law to grant relief, whether such claim is asserted by Employee against the Company or by the Company against Employee.  This includes, but is not limited to: (1) any claims for breach of contract, torts, discrimination, harassment, violation of public policy, unpaid wages, bonuses, expenses or penalties, any claims relating to benefits, hours of work or working conditions; (2) any claims under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family and Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Affordable Care Act, Genetic Information Non- Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all federal or state legal claims that have not been filed in a court or brought before a state, federal, or other governmental administrative body as of the date you received this Agreement; (3) any claims relating to the termination of Employee's employment, any demotion or disciplinary action, any decision not to promote Employee, or any other adverse employment action taken by the Company against Employee; and (3) any employment-related claims by the Company against Employee.  This Arbitration Agreement does not create, and shall not be construed to create, any new substantive rights that Employee or the Company would not have in a judicial or administrative action in the absence of this Arbitration Agreement.

| Overview | Arbitration Agreement | Opt Out Instructions | Arbitration Acknowledgement |

**Dispute Resolution Agreement**

Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to the interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

Nothing contained in this Agreement shall be  construed to prevent or excuse you (individually or together with others) or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

**2. Express Beneficiaries**

All affiliated entities, owners, shareholders, directors, members, officers, employees, and agents of the Company are intended to be beneficiaries of this Arbitration Agreement.  Any arbitrable Claim asserted against any such beneficiary arising out of, relating to, or associated with Employee's employment, or termination of Employee's employment, with the Company is governed by this Arbitration Agreement.

EXHIBIT 7, PAGE 20

| Overview | Arbitration Agreement | Opt Out Instructions | Arbitration Acknowledgement |

### 3. Rules of Arbitration

Any Claim under this Arbitration Agreement shall be resolved by final and binding arbitration conducted before a single arbitrator.  The arbitration will be administered by the American Arbitration Association in accordance with this Arbitration Agreement and AAA's Employment Arbitration Rules and Mediation Procedures ("AAA Rules") then in effect, to the extent the AAA Rules do not conflict with this Arbitration Agreement or the Federal Arbitration Act ("FAA").  In case of such a conflict, this Arbitration Agreement and the FAA shall govern.  The AAA Rules can be found at www.adr.org, by Internet searching for "AAA Employment Arbitration Rules," or by asking for a copy from the Human Resources Department by contacting your HR Manager.  If for any reason the AAA cannot or will not administer the arbitration, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral arbitrator.

California Employees:  Any Claim under this Arbitration Agreement shall be resolved by final and binding arbitration conducted before a single arbitrator.  The arbitration will be administered by JAMS pursuant to this Arbitration Agreement and JAMS Employment Arbitration Rules & Procedures ("JAMS Rules"), and JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Policy"), to the extent the JAMS Rules and JAMS Policy do not conflict with this Arbitration Agreement or the FAA.  In case of such a conflict, this Arbitration Agreement and the FAA shall govern.  The JAMS Rules and JAMS Policy can be found online at www.jamsadr.com/rules-employment-arbitration (Rules) and www.jamsadr.com/employment-minimum-standards (Policy), or by requesting copies from the Human Resources Department by contacting your HR Manager.  If for any reason JAMS cannot or will not administer the arbitration, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral arbitrator.

| Overview | Arbitration Agreement | Opt Out Instructions | Arbitration Acknowledgement |

### 4. Limitations To Agreement's Application

This Agreement does not apply to claims for workers' compensation benefits, state disability insurance, or unemployment insurance benefits.  Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are also excluded from the coverage of this Agreement.  In addition, this Agreement does not apply to any claim by Employee for benefits from an employee benefit plan or pension plan that has its own binding, non-judicial dispute resolution procedure.

A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits the agency to adjudicate the claim notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), or the National Labor Relations Board (www.nlrb.gov). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

EXHIBIT 7, PAGE 21



| Overview | Arbitration Agreement | Opt Out Instructions | Arbitration Acknowledgement |

**5. Starting An Arbitration**

Either party may demand arbitration as provided in the AAA Rules. If you choose to initiate arbitration, you must provide a copy of your Demand (as defined in the AAA Rules) to:

DSW Inc.
Legal Department
810 DSW Drive
Columbus, Ohio 43219
Attention: General Counsel

The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee works, or last worked, for the Company, unless each party to the arbitration agrees in writing otherwise.

**6. Paying For The Arbitration**

DSW will pay all arbitration costs and expenses unique to arbitration, including without limitation the arbitrator's fees. A party demanding arbitration may be responsible for paying a filing fee, as set by the AAA Rules.  Each party shall bear its, his, or her own attorneys' fees and costs; provided, however, that if any party prevails on a Claim entitling the prevailing party to attorneys' fees or costs, the Arbitrator may award reasonable attorneys' fees or costs (or both) to the prevailing party in accordance with such claim and applicable law.  Any dispute regarding payment of fees and/or costs will be resolved by the arbitrator.

| Overview | Arbitration Agreement | Opt Out Instructions | Arbitration Acknowledgement |

**7. The Arbitrator's Award**

The arbitrator must follow applicable law and may award only those remedies that would have applied had the matter been heard in court. Judgment may be entered on the arbitrator's decision in any court having jurisdiction.

**8. Class, Collective, and Representative Action Waiver**

**This Agreement affects your ability to participate in class, collective, and representative actions.** Both the Company and you agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or representative basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any such class, collective, representative or private attorney general proceeding ("Class Action Waiver"). The Class Action Waiver does not apply to any claim you bring as a private attorney general solely on your own behalf and not on behalf of others.

Notwithstanding any other provision of this Agreement or the AAA Rules, disputes regarding the validity, enforceability or breach of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator.  In any case in which (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) a civil court of competent jurisdiction finds all or part of the Class Action Waiver unenforceable, the class, collective, representative and/or private attorney general action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration.

EXHIBIT 7, PAGE 22



| Overview | Arbitration Agreement | Opt Out Instructions | Arbitration Acknowledgement |

You will not be retaliated against, disciplined or threatened with discipline as a result of your exercising your rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective, representative, or private attorney general action in any forum.  However, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. The Class Action Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

**9. Your Right to Opt Out of Arbitration**
**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a statement notifying the Company that the Employee wishes to opt out and not be subject to this Agreement.**  An Employee who wants to opt out must notify the Company of his or her intention to opt out by submitting to the Legal Department a signed and dated written notice drafted by the Employee stating that the Employee is opting out of this Arbitration Agreement.  The written opt-out notification may be sent to the Legal Department: (1) via mail (or FedEx, UPS, etc.) to 810 DSW Drive, Columbus Ohio 43219, Attn: Legal Department, (2) via email to legalcontracts@dswinc.com or (3) via fax to (614) 872-1475.  You must keep a copy of proof of sending the written opt-out notification. In order to be effective, Employee's opt-out notification must be received by the Legal Department within 30 days of the Employee's receipt of this Agreement.

| Overview | Arbitration Agreement | Opt Out Instructions | Arbitration Acknowledgement |

An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. If an Employee does not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement through one of the methods specified above, continuing employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company, even if Employee transfers to a different position or a different location with the Company, and even after the employment relationship ends.  Employee has the right to consult with counsel of the Employee's choice concerning this Agreement and/or the right to opt out of this Agreement.

**10. Enforcement of this Agreement**
This Arbitration Agreement represents the complete agreement between Employee and the Company concerning the subject matter hereof and supersedes any prior discussions or representations relating to its subject matter.  Nothing in this Arbitration Agreement alters the at-will status of Employee's employment.  This Arbitration Agreement may not be altered or modified other than by an individual written agreement specifically referencing such alteration or modification, signed both by Employee and by an Officer of the Company. If any provision of this Arbitration Agreement is held invalid, void or unenforceable by a court having jurisdiction, the remainder of this Arbitration Agreement shall remain in full force and effect; provided, however, that if the Class Action Waiver provision in Section 8 is held unenforceable, the parties shall be deemed to have made no agreement to conduct any arbitration on a class, collective or representative action basis, but rather only on an individual basis.

EXHIBIT 7, PAGE 23



## Opt Out Instructions Tab



EXHIBIT 7, PAGE 24

Arbitration Acknowledgment Tab



EXHIBIT 7, PAGE 25

# EXHIBIT 8

## Associate Handbook

> Edit Transcript Details

### Training Details

Training Type: Online Class
Provider: DSW - HR Compliance
Version: 5.0
Training Hours: 0 Hours 0 Min
Description: All DSW Associates are required to acknowledge they have received a copy of the handbook.
Status: Completed
Due Date: 3/31/2017
Certificate: **Print Certificate**

#### TRAINING PROGRESS

Progress: [████████] 100% (1 of 1 units complete)
Last Accessed: 3/15/2017
Total Views: 1
View Time: 0 Hour(s) 1 Minute(s)
Status: Completed
Modules: **View details of modules for Associate Handbook**

### Assignment and Version History

| Registration Number | Latest Registration? | Delivery |
|---|---|---|
| 1 | Yes | Started by JILL MORRISON on 3/15/2017 10:16:00 PM |
| 1 | Yes | Assigned by KATHERINE CLAYTON on 3/10/2017 4:48:27 PM |

### Transcript History

Completed by JILL MORRISON (347570) on 3/15/2017 10:17:06 PM
Started by JILL MORRISON (347570) on 3/15/2017 10:16:00 PM
Approved by Learning Assignment Tool (KATHERINE CLAYTON) on 3/10/2017 4:48:28 PM
Registered by Learning Assignment Tool (KATHERINE CLAYTON) on 3/10/2017 4:48:28 PM
Assigned by Learning Assignment Tool (KATHERINE CLAYTON) on 3/10/2017 4:48:27 PM Comments: Initial Request

* Time Zone: (UTC-05:00) Eastern Time (US & Canada)

# EXHIBIT 9

# DSW LEARNING Resource Center

*This certificate is awarded to*

## JILL MORRISON

*for the successful completion of the course*

### Associate Handbook
*By DSW - HR Compliance*

**Date:** 3/15/2017

**Charles W. Coy,** Director

# EXHIBIT 10



**DSW Arbitration Agreement - Stores**

› Edit Transcript Details

**Training Details**

Training Type: Online Class
Provider: DSW - HR Compliance
Version: 1.0
Training Hours: 0 Hours 0 Min
Description: The DSW Arbitration Agreement and Acknowledgement
Status: Completed
Due Date: None
Certificate: **Print Certificate**

**TRAINING PROGRESS**

Progress: 100% (1 of 1 units complete)
Last Accessed: 3/15/2017
Total Views: 1
View Time: 0 Hour(s) 1 Minute(s)
Status: Completed
Score: 100% Edit Score
Modules: View details of modules for DSW Arbitration Agreement - Stores

**Transcript History**

Completed by JILL MORRISON (347570) on 3/15/2017, 10:19:07 PM
Started by JILL MORRISON (347570) on 3/15/2017, 10:17:45 PM
Approved by Learning Assignment Tool (KATHERINE CLAYTON) on 3/10/2017 5:27:22 PM
Registered by Learning Assignment Tool (KATHERINE CLAYTON) on 3/10/2017 5:27:22 PM
Assigned by Learning Assignment Tool (KATHERINE CLAYTON) on 3/10/2017 5:27:22 PM Comments: Initial Request

* Time Zone: (UTC-05:00) Eastern Time (US & Canada)

# EXHIBIT 11

# DSW LEARNING Resource Center

*This certificate is awarded to*

## JILL MORRISON

*for the successful completion of the course*

### DSW Arbitration Agreement - Stores
*By DSW - HR Compliance*

**Date:** 3/15/2017

**Charles W. Coy**, Director

# EXHIBIT 12

# My Transcript

Your transcript is a record of courses that have been assigned to you based on your role or by your manager. To view completed courses, click the ACTIVE drop-down list and choose COMPLETED.

**Search Results (16)**



### DSW VIP
**Completed:** 4/20/2018   **Status:** Completed



### Dayforce
**Completed:** 7/11/2017   **Status:** Completed



### DSW Arbitration Agreement - Stores
**Completed:** 3/15/2017   **Status:** Completed



### Associate Handbook
**Completed:** 3/15/2017   **Status:** Completed



### Preventing Harassment - Manager Edition
**Completed:** 1/24/2017   **Status:** Completed



### Here4U for Managers
**Completed:** 1/13/2017   **Status:** Completed



### Shoe Lover Training for Support Managers
**Completed:** 8/19/2016   **Status:** Completed



### DSW Anti-Discrimination/Anti-Harassment Policy
**Completed:** 6/7/2016   **Status:** Completed


**Tokenization Rollout**
**Completed:** 3/7/2016    **Status:** Completed


**Charge/Send Associate Training**
**Completed:** 9/1/2015    **Status:** Completed


**2014 Information Security and Compliance Awareness**
**Completed:** 6/28/2014    **Status:** Completed


**2014 Technology Use Policy**
**Completed:** 6/28/2014    **Status:** Completed


**2013 DSW Information Security Awareness**
**Completed:** 4/18/2013    **Status:** Completed


**2013 DSW Information Security Awareness**
**Completed:** 4/18/2013    **Status:** Completed


**Wage & Hour – Manager Edition**
**Completed:** 1/5/2013    **Status:** Completed


**Support Manager Training Curriculum**
**Completed:** None    **Status:** Completed