1   Alan I. Schimmel, Esq.  SBN 101328
    Michael W. Parks, Esq. SBN 154531
2   Arya Rhodes, Esq. SBN 299390
    SCHIMMEL & PARKS, APLC
3   15303 Ventura Blvd., Suite 650
    Sherman Oaks, CA 91403
4   Telephone: 818.464.5061/Facsimile:
    818.464.5091

5   *Attorneys* for Plaintiff

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                          WESTERN DIVISION

10

11  JILL MORRISON; individually, and on          Case:  2:19-cv-09477-DSF-AFM
    behalf of other members of the general
12  public similarly situated and on behalf      Honorable Dale S. Fischer
    of other aggrieved employees pursuant
13  to the California Private Attorneys
    General Act;                                  **NOTICE OF MOTION AND**
14                                                **MOTION TO SET ASIDE**
                                                  **JUDGMENT AND  APPROVE**
15                                                **PAGA SETTLEMENT**

16               Plaintiff,                       [Declaration of Michael W. Parks
                                                  and Proposed Order filed
17       vs.                                      concurrently herewith]

18  DSW SHOE WAREHOUSE, INC., a
    Missouri Corporation; DESIGNER              Courtroom:    7D
19  BRANDS, INC., a California                   Date:         February 7, 2022
    Corporation; and DOES 1 through 100,         Time:         1:30 p.m.
20  inclusive,

21

22               Defendant.

23

24

25

26

27

28

    **MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on February 7, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 7D of the above-entitled Court, located at 350 West 1st Street, Los Angeles, CA 90012, Plaintiff JILL MORRISON ("Plaintiff"), individually and on behalf of the LWDA and all other aggrieved employees, in case 2:19-cv-09477-DSF-AFM ("Action") will and hereby does move this Court for entry of an Order:

1. Setting aside the Court's June 14, 2021, Judgment (Judgment") dismissing the Action.

2. Approving the settlement and release of claims Plaintiff brings on behalf of herself and allegedly aggrieved employees under the Private Attorneys General Act of 2004 ("PAGA");

3. Approving the gross settlement amount of $315,500.00 for Plaintiff's PAGA claims;

4. Approving an award of $85,185.00 (27% of the gross settlement amount) in attorneys' fees to Plaintiff's Counsel;

5. Approving an award of $9,000.00 to Plaintiff's Counsel for reimbursement of actual litigation costs;

6. Appointing ILYM as the settlement administrator, and approving an award of up to $5,100.00 in anticipated costs to ILYM for its settlement administration services; and

7. Approving $211,215.00.00 as payment of civil penalties under PAGA, to be allocated as follows: $158,411.25 (75% of the PAGA penalties payment) to the California Labor and Workforce Development Agency ("LWDA") for its share of PAGA civil penalties, and $52,803.75 (25% of the PAGA penalties payment) to the aggrieved employees.

8. Approving an incentive payment to Plaintiff as the PAGA representative

1      in the amount of $5,000.00.

2      9.    Entering a new final judgment and order dismissing with prejudice all of Plaintiff's claims in the Action pursuant to the terms of the Settlement or such further orders as the Court may determine are appropriate to enter, and for the Court to retain jurisdiction to enforce the terms of the Settlement.

Settlement of this action was reached through coordination with the Ninth Circuit Mediation Program. This Motion is brought pursuant to the California Labor Code, Rule 60(b) of the Federal Rules of Civil Procedure, and Local Rule 7 of this District.  This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the declaration of Michael W. Parks, the pleadings and other papers filed in this action, and on such further oral or documentary evidence or argument presented at the time of hearing.

DATED: January 3, 2022           SCHIMMEL & PARKS
                                A Professional Law Corporation

                               */s/ Michael W. Parks*
                                _____

                                Alan I. Schimmel, Esq.
                                Michael W. Parks, Esq.
                                Arya Rhodes, Esq.
                                *Attorneys* for Plaintiff

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff JILL MORRISON ("Plaintiff"), on behalf of real party in interest the California Labor and Workforce Development Agency ("LWDA") and aggrieved employees, brings this unopposed motion asking the Court to set aside the Court's judgment, dated June 14, 2021 (the "Judgment") so that the Court may evaluate and approve the Parties' settlement of the claims for civil penalties under the California Private Attorney Generals Act ("PAGA").[1]

There are four compelling reasons why this Court should set aside its Judgment dismissing this Action:

1. It is well-settled that "[c]ompromises of disputed claims are favored by the courts..." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). This is particularly true with respect to PAGA actions given that resolution is achieved on a representative basis. By setting aside the Judgment, this Court will aid the Parties in their mutual decision to resolve the claims asserted in this Action for the benefit of the Parties while advancing the public policy goals of settlement of such cases and the legislative intent behind the PAGA.

2. The Parties to the Action, with the coordination of the Ninth Circuit Mediation Program, agreed to resolve the PAGA claims. This fact is critical. There is no dispute between Plaintiff and Defendants before the Court, but rather the Parties jointly seek the relief requested herein. If the relief requested is not granted, substantial judicial and party resources will be expended on a costly and timely appeals process that could ultimately bring the Parties back to square one requesting the very same relief asked for by way of this Motion.

3. The settlement reflects not only the appellate risks – which could result in no recovery for some or all of the aggrieved employees – but also the trial

---

[1] Plaintiff's counsel provided notice of the proposed settlement and this Motion to the LWDA on December 29, 2021. (Parks Decl., Ex "D.")

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

risks based on the facts and potential issues with manageability, since Defendants operate nearly 50 stores in the State of California.

       4.    This Court is the proper forum to provide the required judicial review of the proposed Settlement. The Ninth Circuit Court of Appeals does not have a procedure for approving PAGA settlements.  Therefore, setting aside the Judgment will allow this Court to evaluate and rule upon the good-faith Settlement that was reached after an arms-length negotiation guided by a prominent wage-and-hour mediator, as well as in consultation with the Ninth Circuit mediator.

      For all these reasons, and in order to obtain proper approval of the Settlement to this Court in accordance with the agreement and consent of all of the Parties to this Action, Plaintiff now moves the Court for an order pursuant to Rule 60(b)(6) setting aside the Judgment of dismissal and approving the PAGA settlement.

## II.   **THE PROPOSED SETTLEMENT**

      The proposed settlement totals $315,500.00, which the Parties estimate will be allocated as follows:

- $158,411.25 to the LWDA;
- $52,803.75 to the Aggrieved Employees;
- $5,100.00 in administration costs;
- $85,185.00 in attorneys' fees;
- $9,000.00 in litigation costs and expenses; and,
- $5,000 incentive pay to Plaintiff as the PAGA representative.

      The settlement is fair, reasonable, and adequate, and will provide a significant benefit to the LWDA and to the aggrieved employees while also deterring future alleged violations of the Labor Code while ensuring enforcement of California law. Accordingly, Plaintiff respectfully requests the Court's approval of this settlement.

## III.   **FACTUAL SUMMARY AND PROCEDURAL POSTURE**

      Defendant DSW is a North American retailer of designer and name brand shoes and fashion accessories. Plaintiff Jill Morrison was employed by DSW from

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

July 2010 through May 2018. Plaintiff's primary job duties arose out of retail sales and customer service. The underlying labor code violations Plaintiff alleges include unpaid wages, unpaid meal and rest period premiums, failure to timely pay final wages, non-compliant wage statements, and unreimbursed business expenses.

Plaintiff filed her PAGA and class action complaint in the Los Angeles Superior Court on July 29, 2019. (Dkt. #1-1.) The action was removed to federal court on November 4, 2019. (Dkt #1.) On March 16, 2020, the Court entered an Order granting Defendants' motion to compel arbitration of Plaintiff's individual claims, striking the class claims, dismissing the PAGA claim, and staying the action pending arbitration. (Dkt #21.) On April 15, 2020, Morrison filed a Notice of Appeal to the Ninth Circuit, which the Ninth Circuit dismissed as premature. (Dkt #22.)

Plaintiff filed a demand for arbitration with JAMS on April 20, 2020 (the "JAMS action").   Plaintiff and Defendants thereafter reached a confidential resolution of the JAMS action, pursuant to which JAMS entered an Order dismissing the JAMS action with prejudice on May 18, 2021.  (Dkt. #28-1.) As part of the confidential resolution, Plaintiff and Defendants stipulated to certain facts that maintained Plaintiff's right to appeal this Court's adjudication of the PAGA and class claims in this Action.

On June 14, 2021, the Parties submitted a joint status report and stipulation of facts pursuant to the Parties' resolution.  (Dkt. #31.)  On June 14, 2021, the Court entered judgment dismissing the Action pursuant to the Parties' stipulation of facts. (Dkt. #33.)

On July 12, 2021, Plaintiff filed a notice of appeal with the United States Court of Appeals for the Ninth Circuit. (Dkt. #34.) On July 13, 2021, the Parties were invited to the Ninth Circuit Mediation Program.  (Dkt. #36.)  The Parties expressed their interest in mediating their claims and coordinated with the Ninth Circuit Mediation Program.  Because the Ninth Circuit mediator was not well versed in PAGA litigation, he encouraged the parties' use of a neutral, third-party mediator,

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

which the parties did.  At the mediation, the Parties resolved the PAGA Claims asserted in the Action through private mediation with established mediator Lynn Frank.  The Ninth Circuit mediator then issued an Order dismissing the appeal so and remanding the action to this Court so that the parties could seek approval in the settlement in the District Court.

The settlement will resolve and release all PAGA claims asserted in the Action, and the remainder of the claims will be dismissed with prejudice.  However, the Parties entered into the Settlement Agreement on a conditional basis.  In the event this Court does not set aside its prior judgment to allow it to enter a Final Order approving this PAGA settlement followed by a renewed judgment dismissing the Action with prejudice, the Settlement Agreement will be deemed null and void and will be of no force or effect whatsoever.   Plaintiff will then renew her appeal.

## IV.    THIS COURT HAS JURISDICTION TO SET ASIDE THE PRIOR JUDGMENT AND APPROVE THE PAGA SETTLEMENT

Pursuant to Rule 60, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for any "reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Court's determination under Rule 60 "is an equitable one," permitting relief as the Court fashions appropriate. *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994).  Because of this Circuit's strong policy in support of the resolution of complex litigation such as this Action, and because the settlement is fair, reasonable, and adequate, the Court should grant the Motion

### a.  Public Policy Supports the Settlement of Litigation

"There is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy." *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA(JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008). "There is an overriding public interest in settling and quieting litigation." *Id.* (quoting *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799,

802 (9th Cir. 1996)) (citations omitted).

As described in greater detail below, the Settlement is the result of protracted, arms-length negotiations conducted with the assistance of Lynn Frank and in coordination with the Ninth Circuit Mediation Program (the "Program") including several telephonic conferences with the Program mediator and a full-day mediation with Lynn Frank against the backdrop of the appeal. The Parties to the Settlement have agreed that the Settlement is fair, reasonable, and is in the best interests of the Parties, the LWDA, and Defendant's current and former managerial employees in California.

Rule 60 is the proper procedural mechanism to return the Action to this Court and fulfill the Ninth Circuit's stated goal of resolving complex litigation through settlement. This Court's ruling in *Hebrew Univ. of Jerusalem v. Gen. Motors LLC*, No. CV-10-3790-AB (JCX), 2015 WL 9653154 (C.D. Cal. Jan. 12, 2015) is instructive. While that case was on appeal, the parties resolved the claims asserted by the plaintiff through their mutual participation in the Ninth Circuit Mediation Program. *Id.* at *1. The Ninth Circuit dismissed the appeal on condition of vacatur of this Court's judgment. *Id.* at *2. In granting the parties' motion pursuant to Rule 60, this Court concluded that: (1) no hardship would result from the vacating the underlying judgment, yet hardships would exist if the appeal were reinstated; and (2) the need to conserve judicial resources would be fulfilled by settlement. *Id.*

In granting a motion pursuant to Rule 60, the U.S. District Court for the Eastern District of California in *Bedrock Fin., Inc. v. United States*, No. 1:10-CV-01055 MJS HC, 2015 WL 1989106 (E.D. Cal. Apr. 30, 2015) added additional policy considerations when evaluating whether a judgment should be set aside pursuant to the terms of settlement agreement formed with the assistance of a Ninth Circuit mediator and which specifically required judgment from the district court to be vacated. *Id.* at *1. There, the Eastern District of California highlighted both "the general judicial policy favoring settlement" and "the Ninth Circuit's specific efforts

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

to assist the parties to obtain settlement in this case" as weighing in favor of setting aside the underlying judgments. *Id.* at *3.

These same policy considerations support the instant Motion in this Action. Critically, the prevailing policy favoring settlements strongly supports the Motion. This is especially true given that by setting aside the Judgment, no hardships would result. However, per the terms of the Stipulation entered by the Parties, if the Settlement does not receive final approval by this Court, the Appeal will be reinstated which "which poses a hardship because of the use of potential resources in reinstating and relitigating the appeal." *Hebrew Univ. of Jerusalem*, 2015 WL 9653154, at *2. For the same reason, by setting aside the Judgment and permitting the Parties to present the Settlement to the Court for review, the Court will conserve judicial resources that would be "expended in deciding the appeal." *Id.*

Finally, the Motion is a procedural necessity for the settlement process of the Action, which pursuant to California Labor Code Section 2699(l)(2) still requires this Court to approve the Settlement. After entry of the Judgment, while the Appeal was pending, the Parties had the opportunity to fully evaluate the merits of their respective positions on appeal. While the Parties strongly believed in their respective positions, both sides faced risk and expense given the questions which presented novel appellate issues of first impression. The Parties here, much like the parties in *In re Syncor ERISA Litig.*, chose "the certainty of settlement rather than the gamble of a ruling on" the pending Appeal by the Ninth Circuit and continued protracted litigation. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).

In light of the express will of the Parties and this Circuit's express desire for litigants to seek private resolution of litigation where possible, an order pursuant to Rule 60 is justified.

## V.     ARGUMENT IN SUPPORT OF PAGA SETTLEMENT APPROVAL

The California Legislature enacted PAGA "to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) ("If the California Labor and Workforce Development Agency ('LWDA') declines to investigate an alleged labor law violation or issue a citation, an aggrieved employee may commence a PAGA action against an employer 'personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations.'"). An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

"An employee plaintiff suing [under PAGA] does so as the proxy or agent of the state's labor law enforcement agencies." *Arias*, 46 Cal. 4th at 986. An action for civil penalties under PAGA "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties" *Id.* (quoting *People v. Pacific Land Research Co.*, 20 Cal. 3d 10, 17 (1977)). "Because an aggrieved employee's action under [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.* "Of the civil penalties recovered, 75 percent goes to the California Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.'" *Ochoa-Hernandez v. Cjaders Foods, Inc*., No. C 08-2073 MHP, 2010 WL 1340777, at *1 (N.D. Cal. Apr. 2, 2010) (quoting Cal. Labor Code § 2699(i)).

Further, section 2699(l)(2) states, "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to this part. The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court." Cal. Lab. Code § 2699(l)(2). "A court has discretion to approve the settlement of PAGA claims if the settlement would be 'fair.'" *Junhee Lee v. Esra*

7

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

*Jung*, No. 15-cv-01529-HRL, 2016 U.S. Dist. LEXIS 136162, at \*2 (N.D. Cal. Sep. 29, 2016). "The court may consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.'" *Hollis v. Weatherford US LP*, No. 1:16-CV-00252-JLT, 2017 WL 131994, at \*2 (E.D. Cal. Jan. 12, 2017).

The LWDA has suggested some guidelines for approving PAGA claims, which have been cited with approval by a number of courts: when a PAGA claim is settled, the relief provided for under the PAGA [should] be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court [should] evaluate whether the settlement meets the standards of being fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA. *Syed v. M-I, L.L.C.*, No. 112CV01718DADMJS, 2017 WL 714367, at \*13 (E.D. Cal. Feb. 22, 2017) (internal quotations and citations omitted); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016).

As other courts in this district have found, however, "the Act is surprisingly short on specifics," and neither the California legislature, the LWDA, nor California courts have identified "the appropriate standard for approval of such a settlement." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017). As a result, "[f]ederal district courts, sitting in diversity, have often been left to their own devices in this area of great importance to the citizens of California." *Id*. at 1075-76.

### a. Standard for Approval of PAGA Settlement

The settlement of a PAGA claim requires court approval. Labor Code §2699(l). In reviewing a proposed PAGA settlement, courts are encouraged to be mindful that "[s]ettlement is a compromise, which balances the possible recovery against the risks inherent in litigating further." *In re TD Ameritrade Account Holder*

8

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

*Litig.*, Case No. C 07-2852 SBA, 2011 WL 4079226, *9 (N.D. Cal. Sept. 13, 2011). Indeed, "the very essence of a settlement is … 'a yielding of absolutes and an abandoning of highest hopes,'" as "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 624-25 (9th Cir., 1982) (internal citations omitted). As such, "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits," or "judged against a hypothetical or speculative measure of what might have been achieved." *Id.*

Although the operative PAGA statute does not set forth the criteria by which a PAGA settlement is to be judged, courts often analyze the factors used to review of a class action settlement. In doing so, however, courts should be mindful that "a PAGA claim asserted on a non-class representative basis . . . is not considered a class action but a law enforcement action, and therefore does not have to meet the requirements of [a class action]." *Casida v. Sears Holdings Corp.*, 2012 WL 253217 at *3 (E.D. Cal. Jan. 26, 2012); *Thomas v. Aetna Health of Cal., Inc.*, 2011 WL 2173715, at * 11 (E.D. Cal June 2, 2011); *Arias v. Superior Court*, 46 Cal. 4th 969, 980-88 (affirming lower court's holding that "plaintiff need not satisfy class action requirements" to assert a PAGA claim); *Pedroza v. PetSmart, Inc.*, 2013 WL 1490667, at *15 (C.D. Cal. Jan. 28, 2013); *Mendez v. Tween Brands, Inc.*, 2010 WL 2650571 at *4 (E.D. Cal. Jul. 1, 2010). A court's review of a PAGA settlement necessarily implicates the following unique features that render the approval process distinct from approval of a class action settlement under Rule 23.

First, in evaluating the adequacy of the settlement amount, the Court's focus is not concerned with the amount(s) that "aggrieved employees" are to receive, but rather, must focus on the total settlement amount in achieving PAGA's law enforcement objective. Indeed, "[t]he remedy sought in a PAGA suit consists of civil penalties, not individual or class damages," and a "[PAGA] action is … designed to protect the public and penalize the employer for past illegal conduct," not to

9

compensate aggrieved employees. *Mendez*, *supra*, 2010 WL 2650571 at *4; *see also Ochoa-Hernandez v. Cjaders Foods, Inc.*, 2010 WL 1340777 at *4 (N.D. Cal. Apr. 2, 2010) ("Unlike class actions, these civil penalties are not meant to compensate unnamed employees because the action is fundamentally a law enforcement action.").

As the court in *Ochoa-Hernandez* further explained, "[u]nlike a class action seeking damages or injunctive relief for injured employees, the purpose of PAGA is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *Id*. For these reasons, the California Legislature determined that the State of California should receive the bulk of the proceeds – 75% – of any PAGA settlement or judgment. Lab. Code § 2699(i); *see also ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 198 (2019).

Second, consistent with the fact that unnamed employees have no property interest in a PAGA claim, "[u]nnamed employees need not be given notice of the PAGA claim, nor do they have the ability to opt-out of the representative PAGA claim." *Ochoa-Hernandez*, 2010 WL 1340777 at *5. This renders the approval process of a PAGA settlement distinct from a class action settlement, as there is no need for the Court to employ the two-step approval process required under Rule 23.

Finally, unlike class action settlements under Rule 23, the scope of release permitted in a PAGA settlement is limited. While "judgment in [a PAGA] action is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding . . . the non-party employees, because they were not given notice of the action or afforded any opportunity to be heard, would not be bound by the judgment as to remedies other than civil penalties." *Arias, supra*, 46 Cal.4th at 986-87 (2009); *see also ZB, N.A.*, *supra*, 8 Cal. 5th at 196 ("Nonparty employees are bound by the judgment in an action under the PAGA, but only with respect to recovery of civil penalties"). Thus,

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

the scope of a release in a PAGA settlement does not include the release of the
aggrieved employees' statutory or common law claims for damages and/or
restitution.

**b. The Proposed Settlement is Fair, Adequate and Reasonable**

The Settlement Agreement is attached to the accompanying declaration of
Michael W. Parks as Exhibit "A" and the complete terms are described therein.
(Declaration of Michael W. Parks ("Parks Decl."), ¶¶12-18; Ex. "A".) The Court's
role in evaluating a proposed settlement is limited to ensuring that the agreement
taken as a whole is fair and is not the product of fraud or collusion between the
negotiating parties. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th
Cir. 1998). Courts apply a presumption of fairness "if the settlement is recommended
by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*,
No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is
also "a strong judicial policy that favors settlements, particularly where complex
class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101
(9th Cir. 2008). Although this case is not a class action, the same presumptions and
policies apply to this case as well.

As discussed below, this settlement is presumed to be fair because it was
reached after arms-length negotiations with an experienced and respected mediator,
without any evidence of collusion or fraud. The terms of the settlement are also
objectively fair to the LWDA given the risks inherent in litigation, and the defenses
to liability and representative recovery presented by Defendant in this particular
case.

**i. *The Settlement is the Result of Arms-Length Negotiations***

The parties engaged in adversarial settlement negotiations after significant
statistical analysis of data, informal discovery, calculation of liability by Plaintiff's
counsel, and the assistance of an experienced wage-and-hour mediator. (Parks Decl.,
¶ 3). Counsel for the parties aggressively pursued their respective positions before

eventually reaching an agreement. (*Id.*) Each side provided the other with several settlement proposals before the agreement was reached. (*Id.*) The negotiations were rigorous and conducted at arm's-length. (*Id.*)  The Settlement cannot be described as fraudulent or collusive. (*Id.*) Rather, the Settlement is the product of informed and rigorous negotiations by experienced counsel. (*Id.*) Because the proposed settlement was the result of arms-length negotiations, and there is no evidence of fraud or collusion, the proposed settlement is presumed to be fair. *Wren*, 2011 WL 1230826, at *6.

### ii.  *Plaintiff and Her Counsel Support the Settlement After Significant Investigation of the Factual and Legal Issues*

Where counsel are qualified to represent the proposed class in a settlement based on their prior class and other representative action experience and familiarity with the strengths and weaknesses of the action, the support of Plaintiff's counsel is an important factor that, in turn, supports finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers*, LP, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Plaintiff's counsel has experience prosecuting class and representative wage-and-hour litigation. (Parks Decl., ¶¶ 7-11.) Prior to reaching an agreement to settle the PAGA claims, the parties engaged in formal and informal discovery. (Parks Decl., ¶ 4.) Defendant provided the following information to Plaintiff's counsel prior to mediation: (1) Plaintiff's wage statements, personnel file, and payroll records; (2) Defendant's handbooks in effect during the relevant limitations periods; (3) forms used by Defendant and its employees relevant to Plaintiff's claims; (4) a sampling of employee schedules, (5) a sampling of timekeeping and payroll data for 211 employees and nearly 10,000 pay periods; and, (6) additional statistics for the group of aggrieved employees. (*Id.*)  Further information was also provided live during the mediation in response to both sides' inquiries to the mediator.

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

Using this information, Plaintiff was able to determine or estimate: (i) rates of pay for the aggrieved employees; (ii) the total number of former and current employees who worked during the relevant period; (iii) the total number of eligible shifts worked by all aggrieved employees during the relevant period; (iv) the number of workweeks during the relevant period; (v) the number of pay periods during the relevant period; (vi) the timing and length of meal breaks taken by the aggrieved employees; (vii) the number of rest breaks and meal periods to which employees were entitled during each shift worked; (viii) the amount of meal period and rest break premiums paid by Defendant during the relevant period; (ix) the scope and extent of Defendant's wage and hour policies, practices, and procedures; (x) the amounts owed and paid for overtime and double time; (xi) wage statement compliance; and, (xii) reimbursement of business expenses. (Parks Decl., ¶ 5.)

Based on this representative data, Plaintiff performed an analysis of potential PAGA penalties that could be recovered, and the likelihood of recovering the same based on Defendant's defenses to liability and the ability of the Court to award reduced penalties. (*Id*.) Plaintiff undertook comprehensive and complex mathematical calculations to create a damages model assuming varying rates of violation per labor code section and per pay period. (*Id*.) Plaintiff did a thorough analysis of the written wage and hour policies and conducted targeted legal research regarding wage and hour issues specific to Defendant's industry, in addition to trends within the district courts regarding assessing and levying PAGA penalties following a bench trial. (*Id*.)

After evaluating the factual allegations and legal issues, including a review of the data and information discussed above, and considering the uncertainties and expenses of further protracted litigation and/or appeal, the Parties settled the case in an amount that reflects a fair compromise that confers substantial benefit upon the State of California and the aggrieved employees. Therefore, Plaintiff and her counsel have determined that the settlement is in the best interests of all parties, including

the State of California and the aggrieved employees. (Parks Decl., ¶ 6.) Plaintiff's counsel's determination was made after taking into account all factors that would affect Plaintiff's ability to recover civil penalties on behalf of the LWDA. Plaintiff agreed to settle the LWDA's claims for civil penalties only after performing such an analysis. (*Id.*)   The settlement was reached as a result of the substantial work performed by Plaintiff's Counsel and with the help of Lynn Frank, an extremely experienced and respected wage and hour mediator to boot.  (Parks Decl., ¶ 19-23.)

### iii.  *The Terms of the Settlement Are Fair and Reasonable*

In evaluating the fairness of a proposed settlement, "the test is not the maximum amount Plaintiff might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224, 250 (2001); *see also In re Microsoft I-V Cases*, 135 Cal. App. 4th 706, 723 (2006) ("[courts] should give due regard . . . to what is otherwise a private consensual agreement between the parties" and limit "its inquiry to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching").

Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g., Officers for Justice, supra*, 688 F.2d at 623 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *see also Rodriguez v. West Publ'g Corp*., 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving 30% of damages); *In re Warfarin Sodium Antitrust Litig*., 212 F.R.D. 231, 256-58 (D. Del. 2002) (approving 33% of damages); *In Re Sunrise Secs. Litig*., 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving 20% of damages); *In Re Armored Car Antitrust Litig*., 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig*., 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

damages); *Penaloza v. PPG Industries Inc*., Case No. BC471369, 2013 WL 2917624 at \*2 (Super. Ct. L.A. County, May 20, 2013) (approving PAGA penalties averaging **$7.49 per aggrieved employee** ($5,000 / 667 aggrieved employees)); *Cabrera v. Advantage Sale & Marketing, LLC*, Case No. BC485259, 2013 WL 1182822 (Super. Ct. L.A. County, March 12, 2013) (approving PAGA penalties averaging **$3.33 per aggrieved employee** ($10,000 / 3,000 aggrieved employees). In turn, courts have **approved PAGA settlements of $0**. *See, e.g., Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 589 (2010) ("find[ing] no abuse of discretion in the trial court's approval of the settlement agreement containing" $0 for the PAGA claim).

Such discounts are particularly appropriate in PAGA actions, in which Courts exercise significant discretion in the amount of penalties to award. *See Carrington v. Starbucks Corp*., 30 Cal. App. 5th 504, 529 (2018) (awarding 0.2% of maximum PAGA penalties); *see also Cotter v. Lyft, Inc*., 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien*, 2011 WL 7563047, at \*4 (C.D. Cal. 2011). During the penalty phase in *Carrington*, the plaintiff requested PAGA penalties of approximately $70 million, but was awarded only $150,000—or **<u>0.21% of the maximum</u>**—and the court found this warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. This was affirmed on appeal. *Id*. at 529.

Likewise, in *Cotter*, the Court found that a $1 million PAGA settlement was fair and reasonable in light of the unsettled nature of the law, resulting in a 97.5% reduction from the maximum. And in *Covidien*, the Court reduced the potential penalties by over 82%. *See also, e.g., Thurman v. Bayshore Transit Mgmt*., 203 Cal. App. 4th 1112, 1135-36 (2012) (30% reduction where the employer produced evidence that it took its obligations seriously); *Li v. A Perfect Day Franchise, Inc*., No. 5:10-CV-01189-LHK, 2012 WL 2236752, at \*17 (N.D. Cal. June 15, 2012)

(denying PAGA penalties for violation of California Labor Code § 226 as redundant with recovery on a class basis); *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013) (reducing penalty for past PAGA violations from $1.8 million to $500,000.00, after rejecting numerous other PAGA claims).

Here, the proposed settlement confers substantial benefits on the real party in interest the State of California, as well as the aggrieved employees. In particular, Defendant is expected to pay approximately $158,411.25 to the LWDA, an amount that will be used "for enforcement of labor laws … and for education of employers and employees about their rights and responsibilities under [the California Labor] code." Lab. Code § 2699(i). This amount is significantly more than the amount allocated to the LWDA in other judicially approved settlements of PAGA claims in hybrid actions. (Parks Decl., ¶20.)    *See Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC (E.D. Cal. June 29, 2016), 2016 WL 3549473 at *3 ($1.95 million settlement allocating $10,000 to PAGA penalties); *Garcia v. Gordon Trucking, Inc.,* No. 1:10–CV–0324 AWI SKO (E.D. Cal. Oct. 31, 2012), 2012 WL 5364575 at *7 ($3.9 million settlement allocating $10,000 to PAGA penalties); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP (N.D. Cal Feb. 16, 2011), 2011 WL 672645 at *1 ($6.9 million settlement allocating $10,000 to PAGA penalties); *Guerrero v. R.R. Donnelley & Sons Co*., Case No. RIC 10005196 (Riverside County Super. Ct. July 16, 2013; Judge Matthew C. Perantoni) ($1.1 million settlement allocating $3,000 to PAGA penalties); *Parra v. Aero Port Services, Inc*., No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane Johnson) ($1.4 million settlement allocating $5,000 to PAGA penalties); *Thompson v. Smart & Final, Inc*., No. BC497198 (L.A. County Super. Ct. Nov. 18, 2014; Judge William F. Highberger) ($3 million settlement allocating $13,333 to PAGA penalties); *Chavez v. Vallarta Food Enterprises, Inc*., No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William F. Highberger) ($1.5 million settlement allocating $10,000 to PAGA

16

penalties); *Coleman v. Estes Express Lines, Inc.*, No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman) ($1.5 million settlement allocating $1,000 to PAGA penalties).  The LWDA is being concurrently served with this motion and the settlement agreement prior to this Court hearing the approval motion.  (Parks Decl. ¶42.)

### c.  The Requested Attorneys' Fees and Costs are Reasonable

Plaintiff respectfully requests that the Court award 27% of the gross settlement amount in attorneys' fees.  An award of 27% for fees is appropriate in this case and Defendant does not oppose or object to this request.  Foremost, Plaintiff acted as a proxy on behalf of the State of California zealously battling to keep this PAGA case alive.

When evaluating attorneys' fees, the Ninth Circuit has held that "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994)).  "California courts routinely award attorneys' fees of one third of the common fund."  *Beaver v. Tarsadia Hotels* (S.D. Cal., Sept. 28, 2017, No. 11-CV-01842-GPC-KSC) 2017 WL 4310707, at *9.   When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (*citing Knight v. Red Door Salons*, Inc., 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")).

The percentage may be adjusted upward or downward based on (1) the results

achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50).  As described below, all the factors weigh in favor of awarding Plaintiff's Counsel an award of 27% in attorneys' fees.

### i.  *The Results Achieved*

Here, the approximately 211 employees whose data Plaintiff reviewed prior to mediation worked approximately 9,937 pay periods. Thus, at the default penalty rate of $100 per employee per pay period for an initial violation pursuant to Labor Code section 2699(f), Plaintiff could have obtained a maximum of $993,700 in PAGA penalties assuming a 100% violation rate. Thus, Plaintiff's $315,500 settlement translates to almost 32% of the soaking wet total verdict value.  Moreover, assuming a 100% violation rate, Plaintiff was able to successfully negotiate a settlement yielding approximately $31.75 per pay period for the employees, which in Plaintiff's experience, is considerably well above an average market value threshold on these cases.  (Parks Decl., ¶21.)

Realistically though, the full penalty value is almost never assessed, and there is almost never a 100% violation rate.  In Plaintiff's experience, actual violation rates can be closer to 25%.  For example, the data provided by Defendant showed that during the relevant time period while there were incidents of missed meal and rest breaks, there were also many incidents where Defendant paid meal and rest break premiums to its California employees and where Defendant's employees frequently took compliant meal periods on top of an arguably valid meal break waiver. Moreover, Defendant's employee handbooks and policies arguably "provided" for meal breaks and employees may have chosen not to take them or decided to cut them short without any incentivization or adverse actions by the employer.  The wage statements also revealed incidents where the employer provided compliant overtime and double time payments and where there were no independent wage statement

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

issues other than derivative claims.  A significant aspect of Plaintiff's rest break theory also rested on a disputed interpretation of the *Augustus* case, particularly with respect to whether *Augustus* applied to Defendant's workers subject to the definition of work under California Wage Order 5 (i.e., the FLSA suffered and permit standard) versus the "control" standard that was applied to the putative class in *Augustus*. (Parks Decl., ¶22.)

It is more than likely that the violation rate on Plaintiff's best theories could have been well below 50%.  Even assuming a 50% violation rate, the maximum penalty gross utilizing the full $100 penalty without reduction would have been $496,850.00.  Plaintiff's Counsel's settlement of this case for $315,500 achieves a settlement result that is almost 2/3rds the realistic total verdict value at a 50% violation rate, assuming the full $100 penalty and with NO REDUCTION to the penalty amount.  (Parks Decl., ¶23.)

However, as explained above, Courts regularly exercise discretion to lower the penalty amounts to double or even single digits, especially in cases where, as here, there is no Labor Commissioner finding or ruling or evidence of blatant willful misconduct.. *See Thurman v. Bayshore Transit Management, Inc*., 203 Cal. App. 4th 1112, 1135 (2012); *see also Amaral v. Cintas*, 163 Cal. App. 4th 1157, 1209 (2008) ("Until the employer has been notified that it is violating a Labor Code provision (whether or not the commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties."); *Amalgamated Transit v. Laidlaw Transit Services, Inc*., 2009 U.S. Dist. LEXIS 69842, *26 (S.D. Cal. Aug. 10, 2009).

S&P investigated and researched the facts and circumstances underlying the pertinent factual and legal issues and applicable law.  Based on our investigation and information discovered, S&P believed that there was sufficient evidence to support the allegations that Defendant, *inter alia*, failed to comply with various Labor Code sections in violation of the PAGA.  S&P believes that Plaintiff's claims had merit

and that she will ultimately succeed in this litigation and prevail on appeal, however Plaintiff's Counsel also recognized Defendant's defenses, the fact that this matter had to be pursued on appeal, the costs of further litigation, and multiple risks to recovery.  These defenses include the recent development that the United States Supreme Court has accepted review of a case that challenges the PAGA statute and whether PAGA actions must be compelled to arbitration, *Moriana v. Viking River Cruises*, 20-1573.  (Parks Decl., ¶25.)

Considering the above, and a Court's ability at trial to further reduce the recovery of penalties where the "facts and circumstances … otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory," (Labor Code section 2699(a)(2)), the gross settlement sum of $315,500.00 achieved in this case by Plaintiff's Counsel is significant as a fair and reasonable outcome.

## ii. *The Skill Required and the Quality of Work*

An increase beyond the 25% benchmark is warranted where, as here, "counsel's performance generated benefits beyond the cash settlement." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1049 (9th Cir. 2002).  Plaintiff's Counsel's work product was a catalyst for non-monetary outcomes that inured to the benefit of the State of California and its employees.  In fact, Plaintiff's PAGA letter and PAGA action caused DSW to revisit and review its California policies to implement even greater protections for its California employees.  The size of the settlement is also a notable accomplishment when compared to other PAGA recoveries.  Indeed, it is significant that the outcome achieved in this case represents two-thirds of the realistic potential recoverable dollar amount had Plaintiff taken this case to trial, prevailed and recovered the maximum penalty allowable at a 50% violation rate. Plaintiff has obtained a six-figure recovery for the State and has obtained significant recovery for aggrieved employees throughout the state while causing a large company to review and strengthen its wage and hour practices, policies, and procedures.

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

### iii.  *The Contingent Nature of the Fee*

The challenges that Plaintiff's counsel had to confront and the risks they had to fully absorb on behalf of the LWDA and aggrieved employees are precisely the reasons for multipliers in contingency fee cases. *See, e.g., Noyes v. Kelly Servs., Inc.*, 2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); *Posner, Economic Analysis of the Law*, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed… because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

Attorneys who litigate on a wholly or partially contingent basis expect to receive significantly higher effective hourly rates in cases where compensation is contingent on success, particularly in cases where, like in the case at bar, the result is uncertain. This does not result in any windfall or undue bonus. In the legal marketplace, a lawyer who assumes a significant financial risk on behalf of a client rightfully expects that his or her compensation will be significantly greater than if no risk was involved (i.e., if the client paid the bill on a monthly basis), and that the greater the risk, the greater the "enhancement."

Adjusting court-awarded fees upward in contingent fee cases, like this one, to reflect the risk of recovering no compensation whatsoever for hundreds of hours of labor simply makes those fee awards consistent with the legal marketplace, and in so doing, helps to ensure that meritorious cases will be brought to enforce important public interest policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299. Thus, whether Plaintiffs' Counsel have taken the case on a contingency fee basis must be considered when deciding to vary from the

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

25% benchmark. *Monterrubio*, 291 F.R.D. at 457. Thus, this factor weighs in favor of an upward deviation from the benchmark.

The burden and cost associated with taking a case on a contingency basis is ever present. This is especially true for small boutique firms like Plaintiff's Counsel's. Plaintiff's Counsel's firm consists of three partners and one associate. Thus, this factor weighs in favor of the proposed fee enhancement.

### iv. *The Awards Made in Similar Cases*

In California, federal and state courts have customarily approved payments of attorneys' fees amounting to or exceeding 33 1/3% of the common fund in comparable wage and hour class actions, which is what Plaintiff's Counsel is requesting here. *See Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches*, Inc., No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund). A award higher than 25% is warranted here, like *Vizcaino*, because Plaintiff's Counsel achieved nonmonetary benefits that inured to the public benefit in California. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1049 (9th Cir. 2002); *see* also *See In re Pac. Enter.,* 47 F.3d at 379 (considering "nonmonetary benefits in the derivative settlement"); *cf. Bebchick,* 805 F.2d at 408 (allowing an upward adjustment to the lodestar "to reflect the benefits to the public flowing from [the] litigation").

Plaintiff's Counsel should also be awarded a higher percentage because, like other cases, Plaintiff's Counsel was able to settle this case for two thirds of the maximum verdict value assuming a reasonable 50% violation rate and no reduction in the penalty amount. *See Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149-MMM (SHx), 2008 WL 8150856, at *11-16 (C.D. Cal. 2008) (awarding 34% of the common fund where class counsel achieved a "generous" and "extremely favorable result for the class" despite facing "substantial risk litigating [the] case"); *Boyd v. Bank of America Corp.*, No. 8:13-0561-DOC (JPRx), at *14-18 (C.D. Cal. Nov. 18, 2014) (awarding one third of the common fund where the class

1  counsel achieved a settlement equal to 36% of the full possible relief).

2  ### i. *Cross-Check with Lodestar Calculations*

3  Plaintiff's Counsel's requested lodestar rates are $850 (Schimmel—admitted

4  1981), $800 (Parks—admitted 1991), and $500 (Rhodes—admitted 2014) per hour.

5  Here, Plaintiff's counsel's attorneys' fees prior to the date of filing this Motion are

6  $123,402.50, which are based on approximately 195.35 hours worked at the

7  attorneys' lodestar hourly rates. (Parks Decl., ¶¶ 24-43.)  Plaintiff's counsel has not

8  included in its lodestar calculations any of the additional time we reasonably expect

9  to spend completing preparation of this motion, coordinating with opposing counsel

10 related to the motion and approval, preparing for and appearing at the hearing for

11 approval, working with the Settlement Administrator as needed, and resolving any

12 post-approval issues that may arise.  Plaintiff has also excluded excluded secretarial

13 and administrative tasks from the computation as well.  (See Parks Decl., ¶38.)

14 Calculation of the lodestar, which measures the lawyers' investment of time

15 in the litigation, provides a check on the reasonableness of the percentage award.

16 Thus, while the primary basis of the fee award remains the percentage method, the

17 lodestar may provide a useful perspective on the reasonableness of a given

18 percentage award. *Vizcaino*, 290 F.3d at 1050. "To inform and assist the court in the

19 exercise of its discretion, the burden is on the fee applicant to produce satisfactory

20 evidence—in addition to the attorney's own affidavits—that the requested rates are

21 in line with those prevailing in the community for similar services by lawyers of

22 reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport*

23 *Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886,

24 896 (1984)).

25 Moreover, the lodestar amount may be increased by applying a multiplier. *See*

26 *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977). In California, "[m]ultipliers can range

27 from two to four or even higher" and are routinely applied in the range requested by

28 class counsel. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001);

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

*see also Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (upholding 2.5 multiplier); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (1984) (affirming a fee award that included a 12.0 multiplier). Some of the factors a trial court considers when determining whether to apply a multiplier are: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citations omitted). The ultimate goal is "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Valley Audubon Soc. v. County of San Bernardino*, 155 Cal. App. 3d 738, 755 (1985). Fee awards that are too small "chill the private enforcement essential to the vindication of many rights…." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 53 (2000).

Finally, although not required to do so, Plaintiff's Counsel also provided detailed billing records regarding the number of hours spent on this case in further substantiation and support of the Court's cross-check concerning the reasonableness of the proposed fee award.  (Parks Decl. ¶¶30-43, Ex. "B".) Moreover, Plaintiff recently had a PAGA settlement approved in federal court in this same district at the same lodestar rates and attorney fee percentages requested herein.  (cite.)

In light of the total hours and lodestar rates, the risk associated with this Action, and the substantial benefit translated to the State of California and its employees because of this Settlement, Plaintiff's counsel's requested fee award would be cross checked at an approximate 2.0 multiplier of the lodestar fees. Plaintiff's counsel respectfully submits that an award of a 27% of the recovery for $85,185.00 in attorneys' fees is reasonable under the circumstances of this case.

### d. Plaintiff's Reasonable Request for Reimbursement of Actual Litigation Costs

Plaintiff's counsel also requests reimbursement for their actual litigation

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**

costs. The settlement agreement provides for reimbursement of costs not to exceed $9,000.00. To date, Schimmel & Parks has incurred actual costs in the amount of $9,000.00. (Parks Decl., ¶ 42; Exhibit "C".) These costs were reasonably incurred in prosecuting this case on behalf of the LWDA and the aggrieved employees and should be approved by the Court.

### e. Settlement Administration

The parties have agreed to use ILYM to administer the Settlement. Estimated costs will not exceed $5,100.00. (Parks Decl., ¶ 44.) This amount will include all costs of administering the settlement including but not limited to (i) preparing, issuing and mailing any and all notices to the aggrieved employees and the parties' respective counsel; (ii) communicating with the aggrieved employees and the parties' respective counsel; (iii) computing, processing, reviewing and making payments to the aggrieved employees; (iv) preparing any tax returns and other filings required by any governmental taxing authority or agency; and preparing and mailing any required notices under the Class Action Fairness Act.

## VI.  CONCLUSION

For all the foregoing reasons, this Court should grant this Motion setting aside the Judgment and approving the PAGA Settlement.  The Parties respectfully ask the Court to adopt the [Proposed] Order submitted herewith, and enter Judgment accordingly.

DATED: January 3, 2022          SCHIMMEL & PARKS
                                A Professional Law Corporation

                                 /s/ Michael W. Parks
                                _____
                                Alan I. Schimmel, Esq.
                                Michael W. Parks, Esq.
                                Arya Rhodes, Esq.
                                *Attorneys* for Plaintiff

**MOTION TO SET ASIDE JUDGMENT AND APPROVE PAGA SETTLEMENT**